The **UNIVERSE LIFE INSURANCE COMPANY, AIA Services Corporation, and AIA Insurance, Inc., Appellants,**

v.

**Ida M. GILES, Appellee.**

No. 06–97–00112–CV.

Court of Appeals of Texas, Texarkana.

Sept. 15, 1998.

Rehearing Overruled Oct. 14, 1998.

See also, 950 S.W.2d 48.

Robert H. Renneker, Dallas, for appellants.

Jesse L. Nickerson, III, Paris, for appellee.

Before CORNELIUS, C.J., and GRANT and ROSS, JJ.

## OPINION

GRANT, Justice.

Universe Life Insurance Company, AIA Services Corporation, and AIA Insurance, Inc. (Universe), appeal from an *ex parte* turnover order in favor of Ida M. Giles awarding $1,500 in attorney's fees and from the court's refusal to consider Rule 13 sanctions.[1]

Universe challenges the trial court's turnover order in three points of error, contending that the trial court erred in entering a turnover order because Universe had fully superseded the judgment, in conducting an *ex parte* hearing on the turnover order, and in refusing to consider sanctions under Rule 13.

This case arises from an earlier appeal to this court in *Universe Life Ins. Co. v. Giles*,[2] in which this court partially reduced the punitive damages award and the Texas Supreme Court subsequently eliminated the punitive damages award altogether. The

Supreme Court left intact the judgment for actual damages. During the earlier appeal, Universe fully superseded the judgment by filing a supersedeas bond with the trial court.

Universe contends that, after the Texas Supreme Court issued its opinion, it attempted to tender the full amount of the judgment to Giles, and that such tender was refused. Universe states that it attempted to settle with Giles and tendered $131,910.26 to Giles' counsel, conditioned upon the execution of a Release of Judgment, Cost Bond, and Supersedeas Bond by Giles, as well as counsel's signature on a Joint Motion to Release Cost Bond and Supersedeas Bond, and a proposed Order Releasing Cost Bond and Supersedeas Bond. Giles disagrees with Universe's recitation of facts concerning Universe's tender of judgment and contends that a proper tender was never made. Issues of claimed tender and proper tender are not raised on appeal.

On August 1, 1997, prior to the return of the mandate to the trial court, Giles filed an Application for Turnover Order requesting that Universe turn over the full amount of the judgment. A hearing was held on August 2, 1997, and on August 4, 1997, the trial court signed an *ex parte* turnover order directing Universe to pay $132,136.35 into the court registry on or before 2:00 p.m. local time on August 6, 1997. The order provides:

> After considering the pleadings and other papers on file with this Court, the evidence presented, and the argument of counsel, the Court finds and concludes that plaintiff is entitled to an order for the delivery of the following property for the reason that said property is not exempt from attachment, execution, or any other type of seizure for the satisfaction of liabilities, and cannot be readily attached or levied on by ordinary legal process....

The turnover order further orders Universe to pay the additional sum of $1,500 for attorney's fees.

Upon receipt of the turnover order, Universe deposited $132,281.27 into the court

---

1. Tex.R. Civ. P. 13.

2. 881 S.W.2d 44 (Tex.App.-Texarkana 1994), *aff'd in part*, 950 S.W.2d 48 (Tex.1997).

registry. Universe also filed a Motion to Set Aside Turnover Order and for Sanctions, asking the court to set aside the order, to determine the amount of the judgment, and to impose Rule 13 sanctions on Giles' counsel. A hearing on the motion was held August 12, 1997, after which the district court refused to set aside its turnover order, refused to vacate the award of attorney's fees, and refused to consider the motion for sanctions. The court also determined the exact amount due under the judgment.

The standard of review of a turnover order is whether the trial court abused its discretion.[3] The test for determining whether the trial court abused its discretion is whether it acted without reference to any guiding rules or principles, or in other words, whether the court's actions were arbitrary and unreasonable.[4]

All three points of error attacking the turnover order proceeding are based upon recovery under the supersedeas bond.

### Effect of Supersedeas Bond on Turnover Order

■ In their first point of error, Universe argues that the trial court abused its discretion in entering a turnover order because Universe had fully superseded the judgment. Universe contends that, under Rule 47 of the Rules of Appellate Procedure,[5] once a supersedeas bond has been filed, a district court's power to enforce the judgment is limited to determining the amount of the bond. Rule 47 provides, in part

(j) **Effect of Security.** Upon the filing and approval of a proper supersedeas bond, deposit, or the provision of such alternate security as ordered by the trial court in compliance with these rules, execution of the judgment or so much thereof as has been superseded, shall be suspend-

ed, and if execution has been issued, the clerk shall forthwith issue a writ of supersedeas.

(k) **Continuing Trial Court Jurisdiction.** The trial court shall have continuing jurisdiction during the pendency of an appeal from a judgment, even after the expiration of its plenary power, to order the amount and the type of security and the sufficiency of sureties and, upon any changed circumstances, to modify the amount or the type of security required to continue the suspension of the execution of the judgment. . . .

Enforcement of the judgment is suspended, according to Universe, upon the filing and approval of the supersedeas bond. Rule 47(j) states that where a supersedeas bond has been filed and approved, execution of the judgment "shall be suspended."

Universe contends that this position is supported by the Dallas court's holding in *Anderson v. Lykes.*[6] There, the court held that the pendency of an appeal does not suspend the right of a judgment creditor to seek aid in the trial court to enforce a judgment under the provisions of Section 31.002 of the Texas Civil Practice and Remedies Code, the turnover statute, *unless that judgment is superseded.*[7] The court also stated that, under Rule 627 of the Rules of Civil Procedure, "[a] judgment creditor has a statutory right to have execution issue to enforce a judgment pending appeal where no supersedeas bond has been filed or approved."[8] However, the case's applicability here is limited, as the court did not address the issue of whether or when a supersedeas bond becomes inoperative *after* the appeal, which is at the heart of this case.

Giles argues that the supersedeas bond suspends judgment only during the pendency of the appeal[9] and that once the appeal is

---

3. *Roosth v. Roosth,* 889 S.W.2d 445, 458 (Tex. App.-Houston [14th Dist.] 1994, writ denied).

4. *Beaumont Bank, N.A. v. Buller,* 806 S.W.2d 223, 226 (Tex.1991).

5. Tex.R.App. P. 47(j) & (k) (Vernon 1997) (now Tex.R.App P. 24.1(f) & 24.3).

6. 761 S.W.2d 831 (Tex.App.-Dallas 1988, no writ).

7. *Id.* at 834.

8. *Id.* at 833.

9. Giles notes that Rule 47 is entitled "Suspension of Enforcement of Judgment *Pending Appeal* in Civil Cases." (emphasis added).

final, judgment is no longer suspended. Universe argues that, even if a supersedeas bond becomes inoperative when the appeal becomes final, it remains fully effective until the mandate is returned to the district clerk. They contend that the Supreme Court's judgment was not final until the return of the mandate, and, therefore, the trial court's action entering the order was premature.

Mandate had not yet issued when Giles filed her Application for Turnover Order. The turnover order was signed on August 4, 1997, and the mandate was not returned to the trial court until two weeks later, on August 18, 1997.

■ A mandate is the official notice of the action of the appellate court, directed to the court below, advising it of the action of the appellate court and directing it to have the appellate court's judgment duly recognized, obeyed, and executed.[10] However, issuance of a mandate by an appellate court is not necessary to render a judgment final.[11] The civil procedure rules dealing with the issuance and return of the mandate subsequent to an appellate court's remand are procedural and not necessary to the jurisdiction of the trial court.[12]

■ We recognize that this court has held a judgment void when no mandate had been issued prior to a trial on remand from the appellate court.[13] We decline to follow that precedent because such holding was questioned by the Supreme Court in *Continental Casualty Co. v. Street*[14] and in light of the decisions cited above.

In *Continental,* the case had been retried and judgment entered before the mandate of the court of appeals had been issued granting a new trial.[15] The Supreme Court said in holding that the second judgment of the trial court upon remand was not a void judgment:

> In order to properly preserve the complaint of procedural irregularity in proceeding to trial before the return of the mandate, it is necessary that proper objection be made in the trial court, or that application for prohibition be made to the Court of Civil Appeals. It is only when there is an actual interference with the appellate court's active power and authority over the case by a trial court order that the same can be considered void so as to constitute a fundamental error.[16]

Nothing in the record indicates that Universe objected in the trial court to entry of the Turnover Order because the Supreme Court's mandate had not yet been received. Further, there was no interference with the Supreme Court's active power and authority because the Supreme Court's judgment became final when Universe did not file a motion for rehearing on or before July 24, 1997, a period of fifteen days after rendition and entry of the judgment on July 9, 1997.[17] Therefore, the trial court's entry of turnover order was not premature.

■ The specific language applying to the issue raised in this case is contained in Rule 51.1: "When trial court clerk receives a mandate, the appellate court's judgment must be

---

10. *Lewelling v. Bosworth,* 840 S.W.2d 640, 642 (Tex.App.-Dallas 1992, no writ).

11. *Continental Gin Co. v. Thorndale Mercantile Co.,* 254 S.W. 939 (Tex.Com.App. 1923); *see Harrison v. State,* 843 S.W.2d 157, 159 (Tex.App.-Houston [14th Dist.] 1992, pet. ref'd) (issuance of mandates are purely a judicial clerical function).

12. *Brazzel v. Murray,* 481 S.W.2d 801, 803 (Tex. 1972), *citing Continental Casualty Co. v. Street,* 364 S.W.2d 184 (Tex.1963).

13. *Motors Ins. Corp. v. Freeman,* 314 S.W.2d 453, 455 (Tex.Civ.App.-Texarkana 1958, no writ).

14. 364 S.W.2d at 186–87.

15. *Id.* at 188.

16. *Id.* (emphasis added).

17. A chronology of the pertinent dates follows:

| | |
|---|---|
| Texas Supreme Court Opinion | July 9, 1997 |
| Date to file Motion for Rehearing (never filed) | July 24, 1997 |
| Hearing on Application for Turnover Order | August 2, 1997 |
| Turnover Order issued | August 4, 1997 |
| Property ordered turned over to Giles | August 6, 1997 |
| Last day to file extension to file Motion for Rehearing (never filed) | August 8, 1997 |
| Mandate issued by Texas Supreme Court | August 14, 1997 |
| Mandate received by Universe | August 18, 1997 |

enforced," and in Rule 65.2: "Upon receiving the Supreme Court's mandate, the trial court clerk must proceed to enforce the judgment of the Supreme Court's as in any other case."

Both of these provisions contain mandatory language for the trial court clerk to enforce the judgment upon receipt of the mandate. Nothing in the rules prohibits the trial court from enforcing the appellate court's judgment after it has been rendered but before the mandate has been received.

In the present case, the issue is not based upon the trial court clerk's mandatory enforcement of the judgment upon receipt of the mandate, but rather the case involves the trial court's acting upon the judgment of the appellate court after it has been rendered and before the mandate has been received. Because the fact situation involves the trial court's discretionary function—not the clerk's mandatory function, we do not construe these two rules to be applicable to this case.

■ Universe also complains in this point of error that the district court abused its discretion in entering a turnover order because once a supersedeas bond had been filed, Giles could not satisfy the requirements of the turnover statute, which provides a method for court-ordered collection of judgments through injunction or other means to reach property of the debtor.[18] The statute provides, in part, that

> (a) A judgment creditor is entitled to aid from a court of appropriate jurisdiction through injunction or other means in order to reach property to obtain satisfaction on the judgment if the judgment debtor owns

property, including present or future rights to property, that:

> (1) cannot readily be attached or levied on by ordinary legal process; and

> (2) is not exempt from attachment, execution, or seizure for the satisfaction of liabilities.[19]

Universe argues that the filing of a supersedeas bond precludes, as a matter of law, any inference that the judgment debtor is the owner of property that could not readily be attached by ordinary legal process because the plaintiff may always resort to the supersedeas bond in satisfaction of her judgment. To be entitled to the benefits of the turnover statute, the plaintiff must show that the judgment debtor is the owner of property that could not readily be attached or levied on by ordinary legal process.[20] Under the terms of the statute, this requirement applies only to the *judgment debtor's property*. A supersedeas bond is a contract for the benefit of a judgment creditor; it is not property owned by the judgment debtor. Therefore, the turnover statute does not apply to supersedeas bonds.[21]

■ The turnover statute only requires that nonexempt property cannot readily be attached.[22] In its order, the trial court stated that it found the property in question, $132,136.35 owned by Universe, could not be readily attached or levied on by ordinary legal process. There is no evidence to the contrary. As stated earlier, the supersedeas bond is not the debtor's property and furthermore in this case was not property that could be readily attached or levied on. Under current law, there is no requirement that the judgment creditor demonstrate that oth-

---

18. Tex. Civ. Prac. & Rem.Code Ann. § 31.002(a) (Vernon 1997); *Roosth*, 889 S.W.2d at 458.

19. Tex. Civ. Prac. & Rem.Code Ann. § 31.002(a).

20. *Brink v. Ayre*, 855 S.W.2d 44, 45 (Tex.App.-Houston [14th Dist.] 1993, no writ).

21. Even if a supersedeas bond is the judgment debtor's property, it is not property that can be *readily* attached or levied on by ordinary legal process. There is no showing in this case that the judgment could be collected without filing an independent action. The judgment is this case was not rendered against the supersedeas bond surety. To recover on the supersedeas bond,

Giles would have to seek amendment to the judgment from the Supreme Court to include the surety (Tex R.App. P. 182(a) (now Tex.R.App P. 60.5)) and then proceed with a collection action against the sureties on the bond. Alternatively, Giles could bring a contract action against the sureties. *Muniz v. Vasquez*, 797 S.W.2d 147, 150 (Tex.App.-Houston [14 th Dist.] 1990, no writ). Access may also be achieved in the appellate court by motion for judgment to be entered against the sureties on the bond. *Id.*

22. *Childre v. Great Southwest Life Ins. Co.*, 700 S.W.2d 284, 288 (Tex.App.-Dallas 1985, no writ).

er methods of collecting the judgment have failed.[23] A judgment creditor need not first exhaust other legal remedies prior to seeking relief under the turnover statute if the statutory requirements are met.[24] Therefore, Giles satisfied the requirements of the turnover statute.

■ The purpose of a supersedeas bond is to secure the appellee and *abate*, until judgment becomes final, the remedies he would otherwise have for realizing his judgment.[25] It follows that a supersedeas bond does not *eliminate* those remedies when a judgment becomes final. In the case of a judicial bond such as a supersedeas bond, the surety's undertaking is simply an express contract that the surety will, failing a reversal, pay the judgment recovered against the appellant.[26] The appellee or judgment creditor may recover from the surety on his contractual promise, *or from the judgment creditor as principal*.[27] The fact that Universe had filed a supersedeas bond did not preclude Giles from seeking a turnover order once the appeal was final.

This point of error is overruled.

### *Ex Parte* Hearing

■ In their second point of error, Universe contends that the trial court erred in conducting an *ex parte* hearing on the turnover order. Due process, Universe argues, requires notice prior to a hearing on a turnover order where a supersedeas bond has been filed, and that, because they fully super-

seded the judgment, they are entitled to rely on the efficacy of their supersedeas bond.

Universe's complaint concerning notice of hearing is specifically directed to the trial court's award of $1,500 in attorney's fees. The judgment creditor may recover attorney fees and reasonable costs under the turnover statute.[28] Universe contends that such award was error because there was no notice of a hearing at which attorney's fees would be awarded, there was no evidentiary hearing conducted prior to the entry of the order, and there was no record of the hearing.

Two Texas courts of appeals have held that a judgment creditor is *not* entitled to notice prior to the entry of a turnover order.[29] "[F]ailure to provide prior notice and hearing before the issuance of a turnover order under § 31.002 does not compromise constitutional principles."[30] Giles argues that the Supreme Court's decision in *Ex parte Johnson* also supports this holding.[31] However, *Johnson* is factually distinguishable from this case because Johnson had notice of the hearing and was represented by counsel at the hearing.[32]

Universe contends that the district court must conduct either a show cause hearing or an evidentiary hearing prior to the imposition of any final order according to the decisions in *Thomas* and *Plaza Court, Ltd.* In *Thomas*, the trial court ordered the funds to be delivered into the registry of the court, set a hearing, and issued notice of the hearing to show cause why the funds should not subse-

23. *Resolution Trust Corp. v. Smith*, 53 F.3d 72, 78 (5th Cir.1995).

24. *Hennigan v. Hennigan*, 666 S.W.2d 322, 323 (Tex.App.-Houston [14th Dist.] 1984, writ ref'd n.r.e.).

25. *Edlund v. Bounds*, 842 S.W.2d 719, 732 (Tex. App.-Dallas 1992, writ denied); *Carter Real Estate & Dev., Inc. v. Builder's Serv. Co.*, 718 S.W.2d 828, 830 (Tex.App.-Austin 1986, no writ); *Weber v. Walker*, 591 S.W.2d 559, 563 (Tex.Civ. App.-Dallas 1979, writ dism'd w.o.j.).

26. *Carter*, 718 S.W.2d at 830.

27. *Id.*

28. Tex. Civ. Prac. & Rem.Code Ann. § 31.002(e) (Vernon 1997); *Roosth*, 889 S.W.2d at 458.

29. *Thomas v. Thomas*, 917 S.W.2d 425, 433–34 (Tex.App.-Waco 1996, no writ); *Plaza Court, Ltd. v. West*, 879 S.W.2d 271, 276 (Tex.App.-Houston [14th Dist.] 1994, no writ)(holding that Section 31.002 does not provide for notice to a defendant in turnover proceedings); *Ross v. 3D Tower Ltd.*, 824 S.W.2d 270, 272 (Tex.App.-Houston [14th Dist.] 1992, writ denied).

30. *Thomas*, 917 S.W.2d at 433.

31. *Ex parte Johnson*, 654 S.W.2d 415, 418 (Tex. 1983).

32. *Id.* The Supreme Court did not reach the notice issue. However, a footnote in the opinion suggests that notice and hearing prior to issuance of a turnover order is not required.

quently be released.[33] After the hearing, the order was entered and the funds were released. This, the court held, was proper notice and afforded the appellant a hearing.[34]

In *Plaza Court, Ltd.*, the court held that an evidentiary hearing was required prior to entering its orders *if there was a factual dispute as to the ownership* of the property in question, or the trial court needed to incorporate such a factual finding into its judgment or subsequent enforcement orders.[35]

Giles filed the Application for Turnover Order on August 1, 1997. A hearing was held on August 2, 1997, and the order was signed and filed on August 4, 1997. The turnover order states that the court examined the pleadings and heard the evidence and the arguments of counsel before it made its findings. On August 6, 1997, Universe filed its motion to set aside the turnover order. In its order, the trial court *did not* require that the funds be turned over to Giles. Rather, the order directed Universe to deposit the judgment amount into the court registry. Hearing was then held on Universe's motion on August 12, 1997. Universe had an opportunity at the hearing to raise any defenses. It was not error for the court to conduct an *ex parte* hearing on Giles' turnover request.[36] This is so even in light of Universe's supersedeas bond and the fact that attorney's fees were requested and awarded.

This point of error is overruled.

### Rule 13 Sanctions

Finally, Universe contends that the trial court erred in refusing to consider sanctions under Rule 13. A trial court's ruling on a Rule 13 motion will be disturbed only on a showing of abuse of discretion.[37] Rule 13 provides that the signatures of attorneys to pleadings constitute a certificate "that to the best of their knowledge, information, and belief formed after reasonable inquiry the instrument is not groundless and brought in bad faith or groundless and brought for the purpose of harassment."[38]

Universe argues that Giles' Application for Turnover Order is a pleading brought in bad faith. In the application, Giles asserts that Universe "owns and has within its possession or control, property which is not exempt from attachment, execution, or any other type of seizure for the satisfaction of liabilities, and which cannot be readily attached or levied on by ordinary legal process ..." This statement is untrue, according to Universe, because of the existence of their supersedeas bond. As set out above, the supersedeas bond is not property owned by the judgment debtor under the statute. Therefore, Giles' statement was not false.

The trial court examined the pleadings and heard the evidence and the arguments of counsel before determining that the motion should be denied. The motion for sanctions was considered and then properly denied by the court because the turnover order was not shown to have been brought in bad faith.

This point of error is overruled.

The judgment of the trial court is affirmed.

---

33. *Thomas*, 917 S.W.2d at 434.

34. *Id.*

35. *Plaza Court, Ltd.*, 879 S.W.2d at 277.

36. *See Thomas*, 917 S.W.2d at 434.

37. *Rodriguez v. State Dept. of Highways & Public Transportation*, 818 S.W.2d 503 (Tex.App.-Corpus Christi 1991, no writ); *P.N.L., Inc. v. Owens*, 799 S.W.2d 439, 441 (Tex.App.-El Paso 1990, no writ).

38. Tex.R.Civ.P. 13.