TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-98-00023-CV







Cactus Canyon Quarries of Texas, Inc., Appellant




v.




Joe R. Williams, Billie Louise Williams, and Texas Architectural


Aggregate, Inc., Appellees







FROM THE DISTRICT COURT OF BURNET COUNTY, 33RD JUDICIAL DISTRICT


NO. 9752, HONORABLE V. MURRAY JORDAN, JUDGE PRESIDING 







 Cactus Canyon Quarries of Texas, Inc. appeals the trial court's order releasing the
judgment and the supersedeas bond, challenging the post-judgment interest calculation. We will
affirm.


Procedural History


 Appellant Cactus Canyon Quarries of Texas, Inc. ("Cactus Canyon"), obtained a
$235,996.68 judgment against appellees Joe R. Williams, Billie Louise Williams and Texas
Architectural Aggregate, Inc., in a dispute over damages caused by appellees' trespass and
conversion in mining Cactus Canyon's granite. Both parties appealed and this Court affirmed the
trial-court judgment in an opinion dated July 17, 1996. Cactus Canyon Quarries of Texas,
Inc./Joe R. Williams, Louise Williams, and Texas Architectural Aggregates, Inc. v. Joe R.
Williams, Louise Williams, and Texas Architectural Aggregate, Inc./Cactus Canyon Quarries of
Texas, Inc., No. 03-95-00029-CV (Tex. App.--Austin, July 17, 1996, writ dism'd w.o.j.) (not
designated for publication). This Court overruled both parties' motions for rehearing September
16, 1996, and issued mandate on December 30, 1996. 

 On December 31, 1996, counsel for appellees sent Cactus Canyon a letter offering
to pay the judgment in full plus trial-court costs, post-judgment interest and one-half of the
appellate costs, calculated through January 2, 1997, for a total of $306,231.41, and inquiring
which method of payment Cactus Canyon preferred. On January 3, 1997, when Cactus Canyon
failed to respond, appellees mailed a $306,311.90 (1) check to Andy Carson, trustee. (2) Cactus
Canyon refused the payment, indicating on the returned, uncashed check that it was pursuing an
appeal. In June 1997, appellees again tendered $306,311.90 which Cactus Canyon accepted. 
After Cactus Canyon accepted the payment, appellees sought, and the trial court granted, a release
of the judgment and the supersedeas bond. Cactus Canyon appeals contending it is entitled to
additional post-judgment interest.


Discussion


 Cactus Canyon argues in its first issue that the timing of appellees' tender did not
stop post-judgment interest. In support of its position, Cactus Canyon contends first that a tender
which results in a loss of appellate rights cannot stop post-judgment interest. Because Cactus
Canyon had no appellate rights at the time of the tender, we do not reach the merits of its first
contention. When appellees made the tender on January 3, 1997, this Court's judgment was final,
since neither party had timely filed an application for writ of error with the supreme court. See
Tex. R. App. P. 53.7(a) (former Tex. R. App. P. 130). Notwithstanding the judgment's finality,
Cactus Canyon filed a petition for bill of review and an application for writ of error in this Court
and in the supreme court. The filing of these extraordinary petitions in an effort to revive its
appeal does not impact the finality of our judgment. Only if the supreme court had granted the
out of time application for writ of error or bill of review and reversed the judgment would the
finality of this Court's judgment have been affected. Because we conclude that Cactus Canyon
had no further appellate rights at the time of the tender, we reject its first argument.

 In further support of its first issue, Cactus Canyon contends that appellees' tender
could not stop post-judgment interest until this Court's judgment became final. According to
Cactus Canyon, this Court's judgment did not become final until the issuance of the mandate on
August 18, 1997. Cactus Canyon asserts that post-judgment interest could not be calculated before
the issuance of mandate, and that it is entitled to post-judgment interest through August 18, 1997. 
We disagree. Although the mandate cannot issue until the judgment has become final, the issuance
of a mandate is not necessary to render a judgment final. Universe Life Ins. Co. v. Giles, 982
S.W.2d 488, 491 (Tex. App.--Texarkana 1998, pet. denied); Continental Gin Co. v. Thorndale
Mercantile Co., 254 S.W. 939, 941 (Tex. Comm'n App. 1923, judgm't adopted) (ten-day period
to render property replevied calculated from date of supreme-court action on application for writ
or error, not from date of issuance of mandate). See generally Tex. R. App. P. 18.1(a), (b)
(former Rule 86(a)). At the time of the January 3, 1997 tender, this Court's judgment had become
final and no further appellate rights existed, despite the lack of notice of the judgment. See Tex.
R. App. P. 4.5(b) (former Rule 5(f)). Because the issuance of mandate does not impact the finality
of the judgment, we reject Cactus Canyon's argument. Cactus Canyon's first issue is overruled.

 Cactus Canyon argues in its second and fourth issues that because appellees' tender
was conditional, it did not arrest post-judgment interest. Cactus Canyon contends that the tender
was conditioned upon the signing of a release. In order for a valid tender of the amount due to
defeat a claim for interest on the obligation accruing after the tender, the tender must be
unconditional. Staff Indus., Inc. v. Hallmark Contracting, Inc., 846 S.W.2d 542, 549-50 (Tex.
App.--Corpus Christi 1993, no writ). A tender is an unconditional offer by a debtor to pay
another a sum not less than the amount due on a specified debt. Baucum v. Great Am. Ins. Co.,
370 S.W.2d 863, 866 (Tex. 1963). A valid and legal tender of money consists of the actual
production of the funds and offer to pay the debt involved. Id.; see Stern v. Maxwell, 44 S.W.2d
482, 487 (Tex. Civ. App.--Texarkana 1931, writ dism'd) (an offer to pay is not a valid tender);
see also 58 Tex. Jur. 3d Payment § 1 (1996). 

 The January 3, 1997 letter from appellees enclosed a check for $306,311.90. The
body of the letter provided in its entirety:


As you have failed to respond to our attorney's request for settlement by wire
transfer, enclosed please find our check in the amount of $306,311.90 representing
tender of payment in full for the referenced final judgment. 



The January 3, 1997 letter contains no conditions, makes no mention of a release, and included
the check in the full amount of the judgment owing. (3) The letter constitutes a valid and
unconditional tender of the amount owing Cactus Canyon, including the amount of the judgment
and post-judgment interest, calculated through January 3 , 1997, which stopped the accrual of
post-judgment interest. 

 Cactus Canyon next contends that because appellees pursued an "independent
appeal," they cannot claim the tender was unconditional. When appellees made the tender, it was
unconditional. Appellees' attempt to pursue a conditional appeal after Cactus Canyon rejected the
unconditional tender and after Cactus Canyon filed its untimely application for writ of error, does
not make the tender conditional. We overrule Cactus Canyon's second and fourth issues.

 In its third and fifth issues, Cactus Canyon complains appellees failed to prosecute
their appeal as required by the supersedeas bond because appellees did not pursue further appeal
to the supreme court after this Court issued its opinion in 1996. The supersedeas bond provides
that appellees "desire to appeal from the said judgment to the Court of Appeals for the Third
Supreme Judicial District of Texas . . . and, if necessary, by writ of error to the Supreme Court
of Texas . . . ." The supersedeas bond further states that appellees "shall prosecute the appeal
with effect; and in case the judgment of the Supreme Court or the Court of Appeals shall be
against them, they shall perform the judgment . . . ."

 According to our reading of the supersedeas bond, appellees are not obligated to
pursue an appeal to the supreme court. The bond provided for appeal to the supreme court only
"if necessary." Because review by the supreme court is discretionary and damages may be
awarded for a frivolous appeal, it is inconsistent to require a party to pursue an appeal to the
supreme court to satisfy a supersedeas obligation. See Tex. R. App. P. 56.1(a) (granting a petition
for review is discretionary) (former Rule 130(a)); Tex. R. App. P. 53.1 (supreme court may
review court of appeals' final judgment) (former Rule 130(a)); Tex. R. App. P. 62 (damages may
be awarded if a petition for review is frivolous) (former Rule 182(b)). We overrule issues three
and five.


Conclusion


 Because appellees made an unconditional tender on January 3, 1997, post-judgment
interest stopped accruing on that date. The trial court appropriately released the supersedeas bond
and the principals and surety. Accordingly, the trial court's order is affirmed.



 

 Bea Ann Smith, Justice

Before Justices Kidd, B. A. Smith and Powers*

Affirmed

Filed: June 10, 1999

Do Not Publish











* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1. Because the December 31, 1996 letter calculated interest through January 2, 1997, the
January 3, 1997 tender includes an additional day of interest of $80.49, for a total tender of
$306,311.90.
2. According to appellant, Cactus Canyon assigned its cause of action to Andy Carson, trustee. 

3. Cactus Canyon's only dispute concerns the post-judgment interest calculation.



ex. Jur. 3d Payment § 1 (1996). 

 The January 3, 1997 letter from appellees enclosed a check for $306,311.90. The
body of the letter provided in its entirety:


As you have failed to respond to our attorney's request for settlement by wire
transfer, enclosed please find our check in the amount of $306,311.90 representing
tender of payment in full for the referenced final judgment. 



The January 3, 1997 letter contains no conditions, makes no mention of a release, and included
the check in the full amount of the judgment owing. (3) The letter constitutes a valid and
unconditional tender of the amount owing Cactus Canyon, including the amount of the judgment
and post-judgment interest, calculated through January 3 , 1997, which stopped the accrual of
post-judgment interest. 

 Cactus Canyon next contends that because appellees pursued an "independent
appeal," they cannot claim the tender was unconditional. When appellees made the tender, it was
unconditional. Appellees' attempt to pursue a conditional appeal after Cactus Canyon rejected the
unconditional tender and after Cactus Canyon filed its untimely application for writ of error, does
not make the tender conditional. We overrule Cactus Canyon's second and fourth issues.

 In its third and fifth issues, Cactus Canyon complains appellees failed to prosecute
their appeal as required by the supersedeas bond because appellees did not pursue further appeal
to the supreme court after this Court issued its opinion in 1996. The supersedeas bond provides
that appellees "desire to appeal from the said judgment to the Court of Appeals for the Third
Supreme Judicial District of Texas . . . and, if necessary, by writ of error to the Supreme Court
of Texas . . . ." The supersedeas bond further states that appellees "shall prosecute the appeal
with effect; and in case the judgment of the Supreme Court or the Court of Appeals shall be
against them, they shall perform the judgment . . . ."

 According to our reading of the supersedeas bond, appellees are not obligated to
pursue an appeal to the supreme court. The bond provided for appeal to the supreme court only
"if necessary." Because review by the supreme court is